J-S04028-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.T.-P., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: GUARDIAN AD LITEM | : : : : : : : : | |
| | : | No. 2645 EDA 2025 |

Appeal from the Order Entered September 16, 2025
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-DP-0000492-2024

BEFORE:  LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 15, 2026**

S.T.-P. (born 9/2010) ("Child"), through her guardian *ad litem* ("GAL"), Lindsay Demas, appeals from the order entered on September 16, 2025, in the Court of Common Pleas of Philadelphia County, terminating court supervision of her dependency matter.  Upon review, we affirm.

On March 8, 2024, Philadelphia Department of Human Services ("DHS") received a report which alleged that then-13-year-old S.T.-P. disclosed that her father, M.T.-P., inappropriately touched her beginning at age 11, that it had stopped in January of 2024, but he tried to inappropriately touch her again on March 7, 2024.[1]  **See** Dependency Petition, 6/3/24, ¶ 5(b).  S.T.-P. was interviewed forensically at the Philadelphia Children's Alliance wherein she disclosed that Father "touched her in a sexually inappropriate manner at night

_____

[1] We note that Mother, Father and S.T.-P.'s native language is Spanish and they are undocumented immigrants.

after getting into her bed and pretending to nap." *Id.*, ¶ 5(c). She never told her mother, C.P.-B., about the abuse. *Id.*

The same day, DHS spoke with the family with the assistance of an interpreter. *Id.*, ¶ 5(d). Father denied the allegations. *Id.* Mother did not talk about the allegations, but "appeared overwhelmed and began crying." *Id.* DHS established an in-home safety plan wherein Father would move out of the home, and S.T.-P. would remain in the home with Mother. *Id.*

On March 11, 2024, DHS spoke with S.T.-P. again, who again disclosed that Father touched her in a sexually inappropriate manner, consistent with her prior disclosure. *Id.*, ¶ 5(e). S.T.-P. stated that she did not want to attend therapy because it made her uncomfortable. *Id.*

On March 25, 2025, DHS was contacted by a nurse at St. Christopher's Hospital for Children who informed DHS that S.T.-P. stated that "she may have dreamed what had happened to her" and wanted Father to return home. *Id.*, ¶ 5(f). S.T.-P. also told the nurse that the situation was stressful for her. *Id.* DHS attempted to speak with Father again about the allegations. *Id.*, ¶ 5(g). He told DHS that he was staying with a friend in New York because he was not allowed to be at home, but refused to provide the address in New York. *Id.*

DHS conducted an unannounced home visit on April 23, 2024. *Id.*, ¶ 5(h). DHS informed Mother that the family would receive in-home services through a Community Umbrella Agency ("CUA") due to safety concerns. *Id.* Mother informed DHS that S.T.-P.'s maternal aunt and uncle moved in to

assist her as Father was the primary caregiver. *Id.* Mother confirmed that she was not in contact with Father and was committed to S.T.-P.'s safety. *Id.* However, Mother also stated that she did not believe the allegations were true unless there was evidence. *Id.* Mother and Maternal Aunt agreed to sign a safety plan to ensure Father did not return home. *Id.*

On May 8, 2024, DHS conducted a virtual Family Engagement Initiative ("FEI") meeting with Mother and Maternal Aunt. *Id.*, ¶ 5(i). During the meeting, Mother denied that S.T.-P. disclosed being inappropriately touched by Father, stated that she no longer agreed with a safety plan, and that she did not understand why Father could not return home. *Id.* Mother declined services and even called S.T.-P. into the room and instructed her to recant her allegations against Father. *Id.* S.T.-P. did as she was told, and informed DHS that she made up the allegations. *Id.* The meeting ended once Mother was informed of the consequences of not agreeing to a safety plan. *Id.*

DHS filed a petition for dependency on June 3, 2024, noting their concerns for S.T.-P.'s safety if Mother allowed Father to return home before the abuse allegations were fully investigated. Adjudication was deferred for several months:

- June 13, 2024 – continuance granted for case to be listed in contested time slot and to secure a Spanish interpreter

- August 22, 2024 – continuance granted to have dependency petition translated into Spanish for Mother and Father, and for court to review DHS's tender years motion

While adjudication was deferred, S.T.-P. remained in the home with Mother and Maternal Aunt under a safety plan. Father moved out of the home in March of 2024. Adjudication hearings were held on November 1, 2024; November 4, 2024; and January 3, 3025. S.T.-P. was adjudicated dependent on February 11, 2025.[2] The court determined Child was a victim of child abuse and that Father was the perpetrator.[3] Mother was awarded sole legal and physical custody of S.T.-P. The in-home safety plan remained in place. Father was permitted liberal, supervised visitation in the home with Maternal Aunt as the supervisor.

Following permanency review hearings, on September 16, 2025, the court determined S.T.-P. was no longer dependent and terminated court supervision. This timely appeal followed. All parties have complied with Pa.R.A.P. 1925. The GAL raises the following issues for our review:

1. Whether the trial court abused its discretion or legally erred in ruling that there was no risk to child's safety in Mother's home upon ordering termination of court supervision of the matter[.]

2. Whether the trial court abused its discretion or legally erred in ordering the termination of court [supervision] despite parents' sufficient [sic] compliance with court ordered services and single case plan objectives[.]

_____

[2] Child was adjudicated dependent because Mother did not believe Child and potentially pressured Child to recant her allegations. *See* Order of Adjudication, 2/11/25, at 5. Despite Child's recantation, the court determined that S.T.-P. was a victim of child abuse based on her three separate and consistent disclosures prior to the recantation. *Id.* at 3-4.

[3] No criminal charges were filed against Father relative to the abuse.

- 4 -

3. Whether the trial court abused its discretion or legally erred ordering the termination of court supervision of the matter where parents and child did not adequately participate in therapeutic services[.]

4. Whether the trial court abused its discretion or legally erred ordering the termination of court supervision absent the recommendation or evaluation of a mental health professional[.]

5. Whether the trial court abused its discretion or legally erred ordering the termination of court supervision without adequately considering the best interest of the child, necessary at each permanency hearing[.]

6. Whether the trial court abused its discretion or legally erred in considering child's recanted statements, made prior to a finding of child abuse, upon ordering the termination of court supervision and considered child's recanted statements[.]

7. Whether the trial court abused its discretion or legally erred in ordering the termination of court supervision based upon the unlikelihood that circumstances would change with additional oversight from the court[.]

8. Whether the trial court abused its discretion or legally erred in prematurely ordering the termination of court supervision where the court made a finding of child sexual abuse as to Father approximately 7 months prior[.]

GAL's Brief, at 2-3.

Preliminary, we note that the GAL's brief fails to comply with the Pennsylvania Rules of Appellate Procedure.[4] The statement of the case contains argument in violation of Pa.R.A.P. 2117 ("The statement of the case shall not contain any argument."). Rule 2119 requires that the argument

_____

[4] The brief is also replete with spelling and typing errors, grammatical errors, and unfinished sentences.

- 5 -

section of the brief "be divided into as many parts as there are questions to be argued[.]" Pa.R.A.P. 2119(a). The GAL's brief lists eight issues in the statement of the questions involved, but the argument section is only divided into two parts labelled "legal authority" and "legal argument." We do not condone the GAL's failure to comply with the Rules of Appellate Procedure. Because the noncompliance does not impede our review, we decline to find waiver on this basis. *See, e.g., Commonwealth v. Verma*, 334 A.3d 941, 945 n.5 (Pa. Super. 2025).

However, "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009). We conclude that the GAL waived her issues for review by not providing citation to relevant authority or adequately developing argument for each issue. As such, we will address the overarching issue the trial court was able to discern from the GAL's concise statement – whether the court abused its discretion or erred as a matter of law when it terminated court supervision.

We review the orders terminating court supervision for abuse of discretion. *Interest of T.M.*, 239 A.3d 193, 200 (Pa. Super. 2020). We must "accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but [we are not required to] accept the lower court's inferences or conclusions of law." *Id.* (citation omitted).

- 6 -

The GAL asserts that the court abused its discretion when it terminated court supervision in this matter. Essentially, she challenges the court's finding that DHS's services were no longer necessary because the circumstances which necessitated a dependency adjudication, *i.e.,* Father's abuse of S.T.-P., were alleviated, and, as a result, terminated court supervision. ***See*** GAL's Brief, at 33. She contends that the circumstances have not been alleviated because: (1) neither the parents nor S.T.-P. appeared before the court for any permanency review hearing; (2) Father's whereabouts were unknown throughout the proceedings; (3) neither parent completed their single case plan objectives and the court did not enforce compliance; (4) S.T.-P. did not attend or complete therapy; and (5) DHS did not observe any supervised visits between Father and S.T.-P. ***See id.*** at 28-35.

Regarding the termination of court supervision, the Rules of Juvenile Court Procedure instruct, in relevant part:

(a) **Concluding Supervision**. Any party, or the court on its own motion, may move for the termination of supervision when court-ordered services from the county agency are no longer needed and:

(1) the child has remained with the guardian and the circumstances which necessitated the dependency adjudication have been alleviated[.]

\* \* \* \*

(c) **Objection.** Any party may object to a motion under subdivision (a) and request a hearing.

(d) **Hearing**. If objections have been made under subdivision (c), the court shall hold a hearing and give each party an

> opportunity to be heard before the court enters its final
> order

Pa.R.J.C.P. 1631(a)(1), (c), (d).

Following a brief hearing wherein the court heard argument from DHS, parents' counsel, the GAL, and the child advocate, the court terminated supervision:

> I am going to discharge the case. This is an unusual case and I don't believe, given the family's immigration status, that keeping the case open is going to change the outstanding issues, which is getting them eligible for insurance.
>
> And, quite frankly, in this current environment, I could keep it open a year and they're still not going to be eligible for any insurance. So, that's one.
>
> Absent any safety threats in the home and any testimony that [Mother's] been inappropriate in the other care that she provided for [S.T.-P.], I can't keep it open. The third thing is, even if were court-involved and they had insurance, you can't make a 15-year-old engage [in therapy].
>
> And so, I would be – it's very clear to me, from the time I did the adjudicatory, that [S.T.-P.] recanted and has maintained her status since she recanted. And me keeping the case open, I'm not going to be able to force her to accept that I found that there was sexual abuse from her father as to her.
>
> And so, I'm just monitoring something where a child's essentially safe because she won't say – she will switch back and say, yes, in fact, something did occur, and that's not enough of a reason for me to keep the case open.
>
> It's also – I can't keep the case open because the family may allow [Father] to come back into the home at a later point in time. That is the issue with sexual abuse cases, that we take the victims as they are, and once they – she's deciding she's not going to identify as a victim and she's going to deny that she's a victim, that's her choice.

> I will order CUA to provide 90 days of aftercare and to see if the family could receive services from Open Door, but the truth of the matter is, a lot of the agencies that would have provided services to undocumented immigrants don't have the funding any longer to even provide those services.
>
> So, while CUA can explore that, me keeping the case open I don't think is going to force services, given the family's status. So, I am discharging, over GAL/child advocate's objection, because the child is safe in the home and there's no dependency issues because they're not getting the services because [Mother]'s refusing, they're getting [sic] the services because they're no longer eligible as a family.

N.T. Hearing, 9/16/25, at 14-16.

Based on the record before us, we discern no abuse of discretion. S.T.-P. was adjudicated dependent because she was a victim of child abuse perpetrated by Father. Mother did not believe she was abused and potentially pressured her to recant. At the time of the adjudication hearing, the court heard testimony regarding Child's three consistent disclosures, as well as Child's own testimony recanting the allegations. Child provided several explanations for her recantation. Despite the court's belief that Mother pressured Child to recant, Child remained in Mother's care throughout the proceedings.

Father moved out of the home in March 2024 and did not return by the time court supervision was terminated. N.T. Hearing, 9/16/25, at 8. DHS noted that Father did not show an intent to move back into the home, nor did the family express a willingness to allow him to return. *Id.* Additionally, there was no evidence of ongoing abuse or new allegations of abuse. As of the

September 16, 2023, hearing, there were no current safety concerns in the home. *Id.* at 8.

Whether the parents complied with their objectives does not go to the reason for dependency in this case. Nor has the GAL provided us with any authority to the contrary. The ability to complete objectives was hindered by the family's immigration status and the agency's limited resources. As the court noted, S.T.-P. initially disclosed, recanted, and then maintained her recantation throughout the life of the case. That is her choice. Because Father was out of the home, there was no evidence of ongoing abuse, and there was no further dependency or safety concerns, the court determined that court-ordered services from DHS were no longer needed. With Father out of the home, Child was no longer at risk. Thus, the circumstances which necessitated dependency, *i.e.*, Father's abuse of S.T.-P., were alleviated, and the court was within its discretion to discharge dependency and terminate supervision.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/15/2026